UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES SECURITES AND EXCHANGE COMMISSION,

        Plaintiff,

  v.

JOSEPH NANTOMAH, INVESTORS CAPITAL LLC,
GLOBAL INVESTORS CAPTIAL LLC
and HIGH INCOME PERFORMANCE PARTNERS LLC,

        Defendants.

Case No. 25-cv-1130-pp

---

**ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANT NANTOMAH'S ANSWER (DKT. NO. 30)**

---

The plaintiff asks the court to strike individual defendant Joseph Nantomah's response to its complaint. Dkt. No. 30. Because Nantomah's filing does not comply with the Federal Rules of Civil Procedure, the court will strike it and order Nantomah to file an amended answer.

**I.    Background**

On August 1, 2025, the plaintiff filed a complaint alleging that Nantomah and his three limited liability companies engaged in a fraudulent real estate investment scheme in violation of federal securities law. Dkt. No. 1. The plaintiff alleges that the defendants solicited individuals to enter investment contracts to purchase and flip real estate for profit. Id. at ¶¶2, 44, 58. It alleges that Nantomah used at least eighty percent of the investors' funds on personal purchases and unrelated business ventures rather than real estate

1

investments. Id. at ¶¶2, 8, 55, 65–67. The plaintiff alleges that the defendants misled investors and offered and sold unregistered securities in violation of federal law. Id. at ¶¶80–98. The plaintiff advised the court that there are at least seven related cases in this district, brought by various investors against Nantomah and his businesses. Dkt. No. 2.

On August 29, 2025, the court received letters from Nantomah on behalf of himself and the three corporate defendants, requesting a ninety-day extension to respond to the complaint. Dkt. No. 18. Nantomah stated that he was "currently in the process of retaining legal counsel" and that his "potential attorneys ha[d] informed [him] that they [would] need approximately 90 days to study the case, conduct interviews, and gather the necessary documentation to effectively represent [him]." Id. at 1. The plaintiff responded that it did not object to a thirty-day extension. Dkt. No. 20.

On September 24, 2025, the court granted in part Nantomah's request and ordered that the defendants' time to answer the complaint was extended until the end of the day on October 24, 2025. Dkt. No. 21. The court advised Nantomah that he "may represent himself, but he cannot represent defendants Investors Capital, Global Investors Capital and High Income Performance Partners." Id.

On October 22, 2025, the court received from Nantomah another letter requesting "reconsideration" of his extension request. Dkt. No. 23. Nantomah stated that he had "several cases going on in the circuit court directly related to" this case. Id. at 1. He argued that it was "only fair" that he "be granted

2

sufficient time to prepare [his] response" due to the "complexity and interconnectedness of these cases." Id. Nantomah asserted that his "legal team [was] actively working to gather necessary information from the circuit court's lawyers to build a robust defense." Id. He requested an additional thirty to sixty days to respond to the complaint. Id. at 2. The plaintiff responded that it did not object to a further thirty-day extension and requested that all other matters in the case be stayed due to the (at the time) ongoing government shutdown. Dkt. No. 24. The court granted Nantomah's request for a thirty-day extension and ordered that he must file a responsive pleading by the end of the day on November 24, 2025. Dkt. No. 25. The court further ordered that all other aspects of the case were stayed until the government returned to normal operations. Id. The court reminded Nantomah that he could represent himself in court but was not permitted to represent his companies. Id.

On November 24, 2025, the court received from Nantomah (not a lawyer) a letter addressed to the "Court Clerk" and titled "Response to Complaint." Dkt. No. 26. The document states that Nantomah "den[ies] the allegations in the complaint" and that he has "always conducted [his] business in good faith and in compliance will all applicable laws and regulations." Id. at 1. The letter states that Nantomah has "never engaged in fraudulent activities as alleged" and asserts that the court may lack jurisdiction over "certain claims or parties involved." Id. The letter goes on to argue that the complaint fails to state a claim because the investment opportunities Nantomah offered to customers were not a "security" under federal law. Id. at 2–3. Nantomah asks the court to

3

dismiss the complaint "as the allegations are unfounded and unsupported by evidence." Id. at 3. He also asks the court to stay the case "for a reasonable period of time with the court['s] discretion while [he] engage[s] a legal team to go into settlement[] negotiation with SEC." Id.

Not quite two weeks later, on December 4, 2025, the court received from the plaintiff a motion to lift the stay, explaining that the federal government had resumed normal operations. Dkt. No. 27. The court lifted the stay and set a scheduling conference for February 23, 2026. Dkt. No. 28. On December 16, 2025, the court received from the plaintiff a request that the clerk enter default against the corporate defendants, dkt. no. 29, along with a motion to strike Nantomah's response to the complaint, dkt. no. 30. That same day, the clerk entered default against the corporate defendants.

## II.     Plaintiff's Motion to Strike (Dkt. No. 30)

The plaintiff argues that the court should strike Nantomah's letter "answer" because it does not comply with the Federal Rules of Civil Procedure or this court's Local Rules. Dkt. No. 31 at 5. It argues that Fed. R. Civ. P. 8(b) requires the defendant to specifically respond to each allegation in the complaint so that the plaintiff has notice of which allegations are at issue in the case. Id. at 5–6. The plaintiff asserts that Civil Local Rule 10(b) (E.D. Wis.) requires a defendant to answer the complaint in numbered paragraphs that correspond to the paragraphs of the complaint. Id. at 6 n.1. The plaintiff asserts that Nantomah issued a "general denial" of all the allegations in the complaint, which is permitted only when a defendant intends in good faith to

4

deny all the allegations of the complaint. Id. at 6. According to the plaintiff, the complaint "includes numerous allegations that Nantomah cannot in good faith deny," such as allegations involving his ownership in the corporate defendants, statements from his website and social media posts and the terms of various investment agreements. Id. at 7. The plaintiff argues that the court should require Nantomah to file a new answer that responds to each specific allegation in the complaint. Id. at 8.

The plaintiff argues that to the extent the court construes Nantomah's letter as a motion to dismiss the complaint, the court should deny it. Id. at 8–9. The plaintiff asserts that Nantomah disputes the factual allegations in the complaint and asks the court to accept his version of the facts, which is not appropriate for the court to do at the motion-to-dismiss stage. Id. at 9. The plaintiff further argues that the complaint sufficiently pleads that the defendants offered securities in the form of investment contracts. Id. at 10–11. The plaintiff asks the court to deny Nantomah's request for another stay to "engage a legal team" because he has not shown special circumstances justifying a stay. Id. at 12.

In the forty-five days since the plaintiff filed the motion to strike, Nantomah has not responded.

### III. Analysis

The court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Generally, motions to strike are disfavored and courts will deny them

"unless the portion of the pleading at issue is clearly prejudicial and of no possible relevance to the controversy at issue." Heller v. Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). "Prejudice results, for instance, where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party." Am. Econ. Ins. Co. v. Jones, Case No. 23-CV-2602, 2024 WL 51243, at *2 (S.D. Ill. Jan. 4, 2024) (citing Cumis Ins. Soc., Inc. v. Peters, 983 F. Supp. 787, 798 (N.D. Ill. 1997)).

It is unclear whether Nantomah intended his letter to be a motion to dismiss. The letter is captioned "Response to Complaint." Dkt. No. 26 at 1. The section titled "Failure to State a Claim" is listed under the heading "3. Legal Defense," along with "Lack of Jurisdiction" and "Good Faith and Lack of Intent." Id. at 2. These all could be considered affirmative defenses, which a defendant may appropriately assert in an answer. See Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.") Although Section 4 of the letter is titled "Request for Dismissal," that section does not identify a rule under which Nantomah moves to dismiss the complaint and he did not file a supporting memorandum as required by this court's Local Rules. See Civil L.R. 7(a). Construing the document liberally, the court concludes that it is likely that Nantomah intended the letter to be an answer to the complaint.

Even if the court were to construe the document as a motion to dismiss, the court would be required to deny it because at least two of the cases

6

Nantomah cites in support of his argument for dismissal do not exist. Nantomah cites Goldberg v. 401 North Washakie Venture LLC, 155 F.3d 465, 466 (7th Cir. 2014), for the proposition that the plaintiff "cannot have a jurisdiction over" the investment agreements in this case because they are not "securities" under the Securities Act of 1933. Dkt. No. 26 at 3. The case citation he provided—155 F.3d 465—corresponds to a portion of Condon v. Reno, 155 F.3d 453 (4th Cir. 1998), an overturned Fourth Circuit case regarding the constitutionality of the Driver's Privacy Protection Act. The court located a Seventh Circuit case with a slightly different reporter number titled Goldberg v. 401 N. Wabash Venture LLC, 755 F.3d 456 (7th Cir. 2014), which deals with the definition of a "security" under Illinois law. Nantomah also claims that a case with the citation "Johnson v. 2003 App. 242, 117, 652 N.W.2d 48 at 647" states that "proof of horizontal commonality is not required to derive the solicitation to loan money involve a security within the meaning of § 551." Dkt. No. 26 at 2. Both the citation and the purported "direct quote" are unintelligible. The reporter citation "652 N.W.2d 48" corresponds to a Minnesota Court of Appeals case regarding insurance coverage for a silicone breast implant manufacturer. In re Silicone Implant Ins. Coverage Litig., 652 N.W.2d 46 (Minn. Ct. App. 2002). Most of the remaining cases contain strange typos in their names or citations: Stenger v. R.H. Love Galleries, Inc., 741 F.2d 144 (7th Cir. 1984), which Nantomah cites as "Sengry v. R.H. Love Galleries, Inc."; Hirk v. Agri-Research Council, Inc., 561 F.2d 96 (7th Cir. 1972), which Nantomah cites as "Hirk v. R-Arch-Roch. Council, Inc., 561 F.2d 619 (7th Cir.

7

1977); and Milnarik v. M–S Commodities, Inc., 457 F.2d 274 (7th Cir. 1972), which Nantomah cites as "Miriam M.S. Commodities Inc., 15 E.2d 724 (7th Cir. 1972)." Dkt. No. 26 at 2.

Nantomah's citations bear the hallmarks of generative artificial intelligence. In recent years, courts and the legal community have learned that generative artificial intelligence programs like ChatGPT regularly produce inaccurate or false case citations (often referred to as "hallucinated" cases) and that they misstate or misrepresent the law. See In re Martin, 670 B.R. 636, 646–49 (Bankr. N.D. Ill. 2025) (collecting cases discussing the proliferation of AI hallucinated cases and the risks of AI-assisted legal research). Courts across the country have imposed sanctions (both monetary and non-monetary) on attorneys and self-represented litigants for filing AI-generated documents that cite to nonexistent cases or that misrepresent the law. See id.; Glass v. Foley & Lardner LLP, Case No. 24-CV-769, 2025 WL 3079280, at *1 (W.D. Wis. Nov. 4, 2025) ("The pitfalls of submitting court filings that contain hallucinated citations are obvious, and courts have sanctioned licensed attorneys and self-represented litigants alike for their failure to exercise diligence."); Davis v. Marion Cnty. Superior Ct. Juv. Det. Ctr., Case No. 24-CV-01918, 2025 WL 2502308, at *4 (S.D. Ind. Sept. 2, 2025) (reviewing monetary sanctions imposed on parties citing to nonexistent cases); Attaway v. Illinois Dep't of Corr., Case No. 23-CV-2091, 2025 WL 1101398, at *3 (S.D. Ill. Apr. 14, 2025) (warning self-represented plaintiff that future use of hallucinated citations may result in monetary sanctions).

When an attorney or self-represented party files a document in federal court, that attorney or party is certifying to the court that the legal contentions contained in it "are warranted by existing law." Fed. R. Civ. P. 11(b). "Carelessness, good faith, or ignorance are not an excuse for submitting materials that do not comply with Rule 11." Attaway, 2025 WL 1101398, at *2. Nantomah has an obligation to ensure that case citations and legal representations he presents to the court are accurate and are supported by valid precedent; the fact that he is representing himself at this stage does not relieve him of that obligation. Filing a document that contains citations to nonexistent cases or that quotes language that does not appear in a cited case violates Rule 11 because it demonstrates that the filing party has not made a reasonable inquiry into the supporting law. If, in future, Nantomah files more documents that contain citations to nonexistent cases or that quote language that does not appear in a cited case—whether the document is AI-generated or not—the court may impose sanctions on him for violating Rule 11.

Nor is Nantomah's letter a valid answer to the complaint. Federal Rule of Civil Procedure 8 requires a defendant responding to a complaint to "admit or deny the allegations asserted against it by an opposing party." Fed. R. Civ. P. 8(b)(1)(B). Nantomah's letter states only that he "den[ies] the allegations in the complaint." Dkt. No. 26 at 1. Although Rule 8 permits a "general denial," that is only appropriate if the defendant "intends in good faith to deny all the allegations of a pleading—including the jurisdictional grounds." Fed. R. Civ. P. 8(b)(3). "A party that does not intend to deny all the allegations must either

9

specifically deny designated allegations or generally deny all except those specifically admitted." Id.

It is not possible for Nantomah to have made his general denial in good faith. Portions of the complaint contain facts that Nantomah does not dispute. In his answer, Nantomah refers to the corporate defendants as his companies; the complaint contains the same allegations. That alone shows that Nantomah's general denial was not made in good faith. See Am. Econ. Ins. Co., 2024 WL 51243, at *2 (granting motion to strike answer where it contained a general denial of facts the defendant admitted); see also IOU Cent., Inc. v. Admiral Prop. Restoration Inc., Case No. 20-cv-265, 2020 WL 12189178, at *2 (N.D. Fla. Nov. 10, 2020) (general denial was improper because it included "the denial of easily verifiable facts in the complaint, such as the location of the Parties and information relating to the Defendants' companies"). Denying all the allegations in the complaint—even allegations that the defendant admits are true—does not give the plaintiff fair notice of the issues in dispute and thus unduly prejudices it.

The court will grant the plaintiff's motion to strike Nantomah's answer and will require him to file an amended answer by the date the court sets below. Nantomah's answer must specifically respond to each numbered paragraph in the complaint with either an admission of the fact alleged in that paragraph, a denial of the fact alleged in that paragraph or a statement that he lacks knowledge or information sufficient to form a belief about the truth of the allegation contained in that paragraph. Any factual denials must be supported

by evidence (though Nantomah does not need to identify that evidence in the answer). See Fed. R. Civ. P. 11(b)(4). If Nantomah believes that only part of an allegation in a paragraph is true, he may specifically state which part of the allegation he admits and he may deny the remainder of the allegation in that paragraph. Nantomah must organize his answer in numbered paragraphs that correspond with the numbered paragraphs in the complaint. See Civil L.R. 10(b). If Nantomah submits an answer that does not comply with the Federal Rules of Civil Procedure and this order, the court may strike it, find that Nantomah is in default or impose other sanctions.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion to strike defendant Nantomah's answer. Dkt. No. 30. The court **ORDERS** that the answer at Dkt. No. 26 is **STRICKEN**.

The court **ORDERS** that Nantomah must file an amended answer or responsive pleading that complies with the Federal Rules of Civil Procedure and this court's order in time for the court to receive it by the end of the day on **February 28, 2026**. The court will not further extend this deadline.

Dated in Milwaukee, Wisconsin this 30th day of January, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER
Chief United States District Judge**